# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH YOUNG,<br><br>                 Plaintiff,<br><br>  v.<br><br>NEW YORK & COMPANY STORES, INC.,<br><br>                 Defendant. | Case No. 21-cv-0344-BAS-WVG<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (ECF No. 12)** |

      Before the Court is Plaintiff Sarah Young's Motion for Default Judgment ("Motion") against Defendant New York & Company Stores, Inc. (Mot., ECF No. 12.) Plaintiff seeks damages, including attorney's fees, and injunctive relief for a violation of the Americans with Disabilities Act ("ADA") and the Unruh Civil Rights Act ("Unruh Act"). (*Id.*) Defendant has neither opposed this Motion nor appeared in the matter. The Court finds this Motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).

**I.    BACKGROUND**

      According to the Complaint, Plaintiff is a "legally blind" individual and member of a protected class under the ADA pursuant to 42 U.S.C. § 12102. (Compl. ¶¶ 1, 4, ECF No. 1.) As a result of her visual impairment, Plaintiff requires screen-reading software to

independently access the internet. (*Id.* ¶ 25.) Plaintiff primarily uses the "JAWS" and "Mac's VoiceOver" screen-reading programs and used these programs to visit Defendant's website https://www.nyandcompany.com/ on several occasions. (*Id.*)

Plaintiff brought this action against Defendant for "its failure to design, construct, maintain, and operate its website to be fully and equally accessible to and independently usable by Plaintiff and other blind or visually impaired people." (*Id.* ¶ 2.) Plaintiff alleges that she was denied full and equal access to the "facilities, goods, and services offered . . . and made available to the public on Defendant's website" due to accessibility barriers she encountered while attempting to navigate the website. (*Id.* ¶¶ 26–27.) These barriers include a lack of alternative text, empty links that contain no text, redundant links, and linked images missing alternative text. (*Id.* ¶ 27.) Plaintiff also alleges that these access barriers have deterred her from visiting Defendant's brick-and-mortar stores because she cannot access information regarding store hours and locations through the website. (*Id.* ¶ 26.)

Plaintiff asserts that the revenue Defendant generates from the website is "far greater than the associated cost of making Defendant's website equally accessible to visually impaired customers." (*Id.* ¶ 40.) Plaintiff seeks a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) requiring that Defendant comply with Web Content Accessibility Guidelines 2.1 ("WCAG") to make its website accessible to visually impaired users. (Compl. ¶ 37.) Plaintiff suggests that Defendant do so by retaining a qualified consultant. (*Id.*)

## II.   PROCEDURAL HISTORY

On March 8, 2021, the Summons and Complaint were served upon Defendant's registered agent, CT Corporation System, by substituted service. (ECF Nos. 3, 4.) Therefore, Defendant's responsive pleading to the Complaint was due by March 29, 2021. *See* Fed. R. Civ. P. 12(a)(1)(A) ("A defendant must serve an answer . . . within 21 days after being served with the summons and complaint.").

On April 12, 2021, the Court ordered Plaintiff to show cause as to why her case should not be dismissed for failure to prosecute. (ECF No. 5.) On April 14, 2021, Plaintiff requested entry of default against Defendant. (ECF No. 6.) On April 15, 2021, the Clerk of Court entered default against Defendant. (ECF No. 7.)

On June 4, 2021, this Court again ordered Plaintiff to show cause as to why her case should not be dismissed for failure to prosecute. (ECF No. 8.) On June 18, 2021, Plaintiff requested entry of default judgment against Defendant. (ECF No. 9.) On September 29, 2021, the Court denied Plaintiff's motion for default judgment without prejudice because the motion failed to analyze the *Eitel* factors—seven factors the Ninth Circuit has adopted to determine whether default judgment is appropriate. (ECF No. 10.)

On March 29, 2022, this Court again ordered Plaintiff to show cause as to why her case should not be dismissed for failure to prosecute. (ECF No. 11.) Plaintiff filed her renewed Motion for Default Judgment on April 11, 2022, which this Court now addresses.

**III.   LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 55(b)(2) governs applications to the court for default judgment. Default judgment is available as long as the plaintiff establishes: (1) the defendant has been served with the summons and complaint and default was entered for its failure to appear; (2) the defendant is neither a minor nor an incompetent person; (3) the defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) if the defendant has appeared in the action, that the defendant was provided with notice of the application for default judgment at least seven days prior to the hearing. *See* Fed. R. Civ. P. 55; *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1070 (D. Ariz. 2006).

Entry of default judgment is within the trial court's discretion. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether

the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Upon entry of default, the factual allegations in Plaintiff's Complaint, except those relating to damages, are deemed admitted. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Where the amount of damages claimed is a liquidated sum or capable of mathematical calculation, the Court may enter a default judgment without a hearing. *See Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

## IV. ANALYSIS

### A. Procedural Requirements

Plaintiff has satisfied the procedural requirements for default judgment pursuant to Rules 55 and 54(c) of the Federal Rules of Civil Procedure. Pursuant to Rule 55(a), the Clerk properly entered default against Defendant. (ECF No. 7.) Defendant was served with the Summons and Complaint and failed to plead or otherwise defend this action. (ECF Nos. 3, 4.) Defendant is neither a minor nor an incompetent person and is not in military service or otherwise subject to the Soldiers and Sailors Civil Relief Act of 1940. Finally, the Motion complies with Rule 54(c) in that it requests a remedy that is not different in kind from that prayed for in the Complaint. (*See* Compl.) Thus, the Court, in its discretion, may enter a default judgment against Defendant. But before entering default judgment, the Court must first review the factors enumerated in *Eitel*. *See* 782 F.2d at 1471–72.

### B. *Eitel* Factors

#### 1. Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). When a defendant has failed to appear and defend the claims, as here, a plaintiff will be without recourse and suffer prejudice unless default judgement is entered. *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (granting a default judgment for a disabled plaintiff suing under the ADA and the Unruh Act), *abrogated on*

*other grounds by Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030 (9th Cir. 2020). Here, Plaintiff alleges that she suffers discrimination due to Defendant's failure to comply with the ADA and the Unruh Act. Defendant has failed to appear. Plaintiff will suffer prejudice if default judgment is not entered; therefore, this factor weighs in favor of granting Plaintiff's Motion.

### 2. Substantive Merits and Sufficiency of the Complaint

Two of the *Eitel* factors are the merits of the plaintiff's substantive claim and the sufficiency of the complaint. 782 F.2d at 1471–72. The Ninth Circuit suggests these two factors require that a plaintiff "state a claim on which the [plaintiff] may recover." *See Pepsico*, 238 F. Supp. 2d at 1175; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (summarizing that the issue is whether the allegations in the complaint state a claim upon which the plaintiff can recover).

Title III of the ADA states that no individual "shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns . . . or operates a place of public accommodation." 42 U.S.C. § 12182(a). The Ninth Circuit has held that the ADA applies to websites run by companies that are otherwise public accommodations so long as there is a "nexus" between a defendant's physical location and its website. *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905 (9th Cir. 2019) ("Because the ADA only covers 'actual, physical places where goods or services are open to the public, and places where the public gets those goods or services,' there ha[s] to be 'some connection between the good or service complained of and an actual physical place.'") (quoting *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000)). Although the Department of Justice ("DOJ") has not yet issued specific website accessibility guidance, DOJ regulations require public accommodations to "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1); *see also Robles*, 913 F.3d at

905 (emphasizing that the DOJ has affirmed the application of Title III of the ADA to websites of public accommodations).

To succeed under an ADA claim, the plaintiff must "establish that (1) [she] is disabled within the meaning of the ADA; (2) that the defendant[] own[s], lease[s], or operate[s] a place of public accommodation; and (3) that the defendant[] discriminated against the plaintiff within the meaning of the ADA." *Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 368 (2nd Cir. 2008). Discrimination includes the failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii). The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter . . . [their] disability, [or] medical condition . . . are entitled to the full and equal accommodations, advantages, facilities, privileges or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). Accordingly, a violation of the ADA necessarily constitutes a violation of the Unruh Act. *See id.* § 51(f).

Here, Plaintiff has demonstrated a viable ADA claim. First, Plaintiff is "legally blind," and thus, is disabled within the meaning of the ADA. (Compl. ¶¶ 1, 4.) Second, Defendant operates the website at issue, which provides customers access to a catalog of clothing, the opportunity to purchase clothing items, and information regarding store hours and locations. There is a sufficient nexus between Defendant's website and its physical stores because the website contains information regarding store services and locations; therefore, the website is a public accommodation under the ADA. *See Robles*, 913 F.3d at 905. Third, Plaintiff identified multiple access barriers that prevented her from having "full and equal access" to Defendant's facilities, goods, and services due to her disability, which is discriminatory under the ADA. (Compl. ¶¶ 26–27.)

Additionally, the requested modification is both reasonable and necessary to afford Defendant's goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii). Plaintiff asserts that

Defendant can retain a consultant to make its website comply with the WCAG 2.1 guidelines at a low cost compared to the revenue Defendant generates from its website. (Compl. ¶ 40.) This modification is therefore reasonable in light of costs and is necessary to accommodate visually impaired customers.

The merits of the claim and the sufficiency of the Complaint weigh in favor of granting Plaintiff's Motion.

### 3.     Sum of Money at Stake

The fourth *Eitel* factor balances "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176; *see also Eitel*, 782 F.2d at 1471. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in light of defendant's actions." *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06–03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007) (citation omitted).

Here, Defendant is seeking the minimum amount of statutory damages of $4,000.00. (Mot. 16.) This is the amount prayed for in the Complaint. (*See* Compl. 21.) Therefore, this factor favors entering default judgment.

### 4.     Possibility of Dispute

The next *Eitel* factor considers the possibility that material facts are disputed. *PepsiCo*, 238 F. Supp. 2d at 1177; *Eitel*, 782 F.2d at 1471–72. Defendant has neither appeared in this case nor disputed the claims. Therefore, this factor supports entry of default judgment.

### 5.     Possibility of Excusable Neglect

The sixth *Eitel* factor considers whether a defendant's default may have resulted from excusable neglect. *PepsiCo*, 238 F. Supp. 2d at 1177; *see also Eitel*, 782 F.2d at 1472. Defendant was properly served with the Complaint and was sent mailed copies of the Petition for Entry of Default, the Clerk's Entry of Default, and this instant Motion, all without response. Therefore, it is unlikely that Defendant's failure to respond is the result of excusable neglect. *See Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d

995, 1005 (N.D. Cal. 2001) (finding no excusable neglect where the defendants "were properly served with the [c]omplaint, the notice of entry of default, as well as the papers in support of the instant motion"). Accordingly, this factor weighs in favor of entering default judgment.

### 6. Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The mere enactment of Rule 55(b) indicates, however, that "this preference, standing alone, is not dispositive." *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996); *see also PepsiCo*, 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiff['s] Complaint makes a decision on the merits impractical, if not impossible."). Here, Defendant failed to plead or otherwise defend. Thus, the seventh *Eitel* factor does not preclude the entry of default judgment.

### 7. Conclusion

Aside from the policy of deciding cases on the merits, all of the *Eitel* factors weigh in favor of entry of default judgment. Consequently, the Court finds it appropriate to **GRANT** Plaintiff's Motion against Defendant.

## C. Damages

Plaintiff seeks injunctive relief, statutory damages, and attorney's fees against Defendant. (Mot. 15–16). Rule 54(c) limits the relief that can be sought in a motion for default judgment to that identified in the complaint. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *accord PepsiCo*, 238 F. Supp. 2d at 1174. Additionally, a defaulting defendant is not deemed to have admitted facts concerning damages alleged in the complaint. *See PepsiCo*, 238 F. Supp. 2d at 1177 (noting that upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages).

Under the ADA, the Court may grant equitable relief the Court considers appropriate including ordering that the facilities be made "readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12188(b)(2)(A)(iii). As Plaintiff made a viable

claim under the ADA, her request for injunctive relief compelling Defendant to make its website readily accessible to visually impaired individuals within twenty-four months is appropriate. *See Rosales v. Indivest, Inc.*, No. 2:21-CV-02195-AB (PVCx), 2022 WL 2199096, at *7 (C.D. Cal. Mar. 4, 2022) (finding injunctive relief requiring a defendant to "bring its website to substantial conformance with WCAG 2.1" guidelines appropriate where a viable ADA claim was stated by the plaintiff).

Furthermore, a defendant violating the Unruh Act may be liable for up to three times actual damages "but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court." Cal. Civ. Code § 52(a). Plaintiff requests the minimum statutory damages under the Unruh Act of $4,000.00. There is no need for Plaintiff to prove actual damages where she is seeking solely statutory damages. *See Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000). The Court finds the requested $4,000.00 in damages to be appropriate.

Additionally, Plaintiff requests attorney's fees of $6,335.00 and costs of $4,455.00 for a total of $10,790.00. "A prevailing plaintiff under the ADA 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Jankey v. Poop Deck*, 537 F.3d 1122, 1130 (9th Cir. 2008) (quoting *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002)).

> A reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. The district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel. The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less.

*Heifetz v. Mona's Burgers Clayton, LLC*, No. 19-cv-2392-LB, 2021 WL 292034, at *4 (N.D. Cal. Jan. 28, 2021) (quoting *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018)). "The burden is on the party requesting attorney's fees to produce 'satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of

reasonably comparable skill and reputation.'" *In re Easysaver Rewards Litig.*, No. 09-cv-2094-BAS-WVG, 2020 WL 2097616, at *16 (S.D. Cal. May 1, 2020) (quoting *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987)).

Having reviewed the billing records submitted by Plaintiff's counsel, the Court finds that the hourly rates of $600/hour for senior attorneys and $400/hour for junior attorneys are excessive.[1] Plaintiff's counsel provides no support to show that these hourly rates are in line with those prevailing in the community for similar services of lawyers of comparable skill and reputation. The Court notes that other courts have found $425/hour to be a reasonable rate for senior attorneys in similar ADA cases. *See, e.g.*, *Langer v. Ocios LLC*, No. 19-CV-115 JLS (LL), 2020 WL 3433087, at *6 (S.D. Cal. June 23, 2020) (finding $425/hour to be an appropriate rate for senior attorneys); *accord Spikes v. Shoshani*, No. 3:18-CV-1332-CAB-JLB, 2018 WL 6305767, at *6 (S.D. Cal. Nov. 30, 2018); *see also Antoninetti v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 710, 718 (S.D. Cal. Sept. 29, 2014) (awarding fees at a rate of $420/hour), *aff'd sub nom. Goldkorn v. Chipotle Mexican Grill, Inc.*, 669 F. App'x 920 (9th Cir. 2016). Considering the lack of support provided by Plaintiff's counsel for the requested rates, the Court finds, for this district at this time, $425/hour to be reasonable for an attorney of Mr. Coelho's level of experience handling an ADA matter. Additionally, the Court finds $350/hour to be a reasonable rate for junior attorneys. *See Langer*, 2020 WL 3433087, at *6 (finding $350/hour to be an appropriate rate for junior counsel).

Plaintiff's counsel requests $4,455.00 in costs including a $405.00 filing fee, a $3,500.00 expert consulting fee, and a $550.00 fee for obtaining an expert report. The Court finds the filing fee cost of $405.00 to be appropriate. However, Plaintiff failed to provide any legal or factual justification warranting the $4,050.00 in costs for the expert

---

[1] Plaintiff also seeks 2.7 hours of "Staff" time. Based on the billing descriptions, Plaintiff's "Staff" time is clerical work that the Ninth Circuit declines to award as attorney's fees. *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (holding tasks that are "clerical in nature" should be "subsumed in firm overhead rather than billed at paralegal rates"). Therefore, this Court declines to award attorney's fees for Plaintiff's "Staff" time.

consulting fee and expert report, which was never discussed nor relied upon in Plaintiff's Motion. As such, the Court declines to award more than $405.00 in costs. Additionally, the Court will subtract 2.4 hours from the attorney's fee request for the time spent "review[ing] and analyz[ing] [the] expert report." (*See* Mot. Ex. F at 5.) With the noted reduction in hours, the total hours are 2.1 hours for senior attorneys and 8 hours for junior attorneys. Multiplied by the $425/hour rate for senior attorneys and the $350/hour rate for junior attorneys, the attorney's fees the Court finds reasonable are $3,692.50.

## V.  CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff's Motion for Default Judgment. (Mot.) The Court **ORDERS** the Clerk of Court to enter judgment in favor of Plaintiff and against Defendant in the amount of $8,097.50, which constitutes $4,000.00 in statutory damages, $3,692.50 in attorney's fees, and $405.00 in costs. Additionally, this Court **GRANTS** injunctive relief compelling Defendant to bring its website to substantial conformance with WCAG 2.1 guidelines to be accessible under the ADA within twenty-four months of this Order. The Clerk shall then close this case.

**IT IS SO ORDERED.**

**DATED: July 14, 2022**

Hon. Cynthia Bashant
United States District Judge